PRUDENTIAL SECURITIES INCORPO-
RATED, John Rhoades, Kevin O'Friel,
Kent Varner, Joe Nittolo, and Mike
McClain, Relators,

v.

The Honorable John McClellan
MARSHALL, Judge,
Respondent.

No. 95–0698.

Supreme Court of Texas.

Nov. 16, 1995.

Stephen J. Pierce, Jr., Dallas, Steven J. Berry, Dallas, John L. Hill, Houston, James E. Essig, Houston, Corbet F. Bryant, Jr., Dallas, Robert L. Wright, Dallas, for Relators.

Joe B. Abbey, Dallas, Dean Carlton, Dallas, Joseph E. Ackels, Dallas, for Respondent.

PER CURIAM.

Prudential Securities Incorporated, John Rhoades, Kevin O'Friel, Kent Varner, Joe Nittolo, and Mike McClain seek mandamus relief from a trial court order denying arbitration of several libel and slander claims asserted against them by the real parties in interest, former Prudential stockbrokers Edwin Troy Hawkins and Francis Moise. Be-cause we conclude that the claims are within the scope of arbitration agreements Hawkins and Moise entered into with Prudential, we conditionally grant the relief requested.

While employed at Prudential, Hawkins and Moise each signed Uniform Applications for Securities Industry Registration or Transfer in which they agreed to arbitrate "any dispute, claim or controversy that may arise between [them and Prudential] ... that is required to be arbitrated under the rules" of organizations with which they were registered. Hawkins and Moise were both registered with the New York Stock Exchange. Rule 347 of the Board of Directors of the New York Stock Exchange provides that "[a]ny controversy between a registered representative and any member or member organization *arising out of the employment or termination of employment* of such registered representative ... shall be settled by arbitration." (Emphasis added). Hawkins and Moise do not dispute that they are bound by this rule.

Prudential fired Moise April 25, 1994 and terminated Hawkins on September 6, 1994. Prudential filed criminal charges against Hawkins for allegedly stealing customer lists shortly after he was fired, but a grand jury declined to indict him. Later, he sued Prudential and its employees, Rhoades, O'Friel, Varner, and Nittolo. Hawkins alleged that the defendants had conspired to blackball him from the brokerage industry and had made several libelous or slanderous statements to further the conspiracy. He also asserted that the individual defendants were acting in the course and scope of their employment for Prudential and that their allegedly defamatory statements injured him in his profession as a broker.

Prudential and the individual defendants moved to stay the trial court proceedings and compel arbitration of Hawkins' claims. They argued that the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1970), and the Texas General Arbitration Act, TEX.REV.CIV.STAT.ANN. art. 224 to 238–6, 238–20 (Vernon Supp.1995), required the trial court to enforce the arbitration agreement.

The trial court ruled that three of Hawkins' claims were subject to arbitration. These included claims based upon statements that Hawkins was fired "for insubordination, and the office has been broken into and records stolen," "because he lost so much money," and because he made an "unauthorized entry into his office using a false name to seize files of customer complaints." The trial court also ruled that three claims were not subject to arbitration. These included claims based upon statements that Hawkins "lied, cheated and stole," "is a thief, a criminal and should be in jail," and "is a dishonest person and should not be hired [and] omitted truths." Two weeks later, the defendants filed a motion asking the trial court to reconsider its decision and rule that all of Hawkins' claims were subject to arbitration. Hawkins then filed an amended petition, in which he limited his libel and slander allegations to the specific statements the trial court had ruled were not subject to arbitration. He retained, however, the allegations that the statements were made to blackball him from the securities industry, that the individual defendants were acting in the course and scope of their employment, and that the statements tended to injure him in his profession as a broker.

Five weeks later, Moise intervened in Hawkins' lawsuit as a third-party plaintiff. Moise's third-party petition alleged libel and slander claims against Prudential, O'Friel, and another Prudential employee, McClain. The allegedly libelous or slanderous statements forming the basis for Moise's lawsuit were that "Moise is a dishonest person" and "Moise churned accounts." Like Hawkins, Moise alleged that the defendants made these statements to further a conspiracy to blackball him from the securities industry and that the statements tended to injure him in his profession as a broker. The defendants moved to strike Moise's intervention; the trial court overruled their motions on June 14, 1995.

The defendants then moved to compel arbitration of the claims alleged by Moise in his third party petition and to stay, dismiss, or abate the lawsuit. The trial court denied this motion on June 20, 1995; it signed an order overruling the defendants' motion for reconsideration of the order denying arbitration of some of Hawkins' claims on July 19, 1995. Prudential then sought mandamus relief from the orders denying arbitration of Hawkins' and Moise's claims.

■ Before we reach the merits of the defendants' mandamus petition, we must consider Hawkins' and Moise's contention that the defendants waived any right to arbitration. They contend that the defendants waived their rights to arbitration by invoking the judicial process to strike Moise's intervention, by seeking and resisting discovery, by delaying seeking mandamus relief from the trial court's orders, and by not pursuing arbitration of Hawkins' claims that the trial court ruled were subject to arbitration. We disagree.

■ Arbitration of disputes is strongly favored under federal and state law. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *Brazoria County v. Knutson,* 142 Tex. 172, 176 S.W.2d 740, 743 (1943). Accordingly, a presumption exists against the waiver of a contractual right to arbitration. *See Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42. The record before us in this case does not overcome that presumption. Instead, the record indicates that the defendants consistently and timely sought to invoke any contractual rights to arbitration they might have. The first responsive pleading the defendants filed to Hawkins' petition in this case was their Motion to Stay All Proceedings and to Compel Arbitration and Original Answer Subject Thereto. After Moise filed his petition in intervention, the defendants moved to strike his intervention; within three days of the date the trial court overruled the motion to strike, they moved to compel arbitration of Moise's claims.

■ A party does not waive a right to arbitration merely by delay; instead, the

party urging waiver must establish that any delay resulted in prejudice. *See Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985); *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.,* 809 S.W.2d 589, 592 (Tex.App.—Dallas 1991, writ dism'd w.o.j.). Similarly, parties do not waive their right to arbitration by invoking the judicial process in the absence of prejudice to the opposing party. *See Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 496–97 (5th Cir.1986).

Hawkins asserts no prejudice as a result of the defendants' conduct in this litigation. Moise, on the other hand, contends that the defendants' "dilatory tactics" have prejudiced him, apparently referring to various discovery disputes in the trial court. These tactics, Moise alleges, have cost him time and money and prevented him from earning a living as a broker. The record provided us, however, contains no discovery requests served by the defendants on Moise. Instead, the record evidences a dispute, spanning a period of a little more than a month, arising from Moise's efforts to obtain certain discovery from the defendants and a law firm that had previously represented Moise and Prudential in connection with a Securities and Exchange Commission investigation. We cannot conclude, based upon this record, that the defendants' efforts to resist discovery overcome the strong presumption in favor of arbitration. *See Steinberg & Lyman v. Takacs,* 774 F.Supp. 885, 887 (S.D.N.Y.1991); *Home Club, Inc. v. Barlow,* 818 S.W.2d 192, 193 (Tex.App.—San Antonio 1991, orig. proceeding). The defendants' opposition to Moise's discovery was based on their contention that his requests were overbroad or oppressive, or sought privileged material. While we do not address the merits of the defendants' position in the discovery disputes, their opposition is not inconsistent with an intent to invoke contractual arbitration rights. We therefore hold that the defendants did not waive their rights to arbitration.

■ On the merits, the defendants argue that the factual allegations in Hawkins' and Moise's petitions on their face establish that the claims fall within the scope of the arbitration agreements, and that the trial court thus abused its discretion by declining to compel arbitration of all of the claims and stay the trial court proceedings. We agree.

Under the Federal Arbitration Act, any doubts as to whether Hawkins' and Moise's claims fall within the scope of the agreement must be resolved in favor of arbitration. *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42. The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration *"unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir.1990) (quoting *Commerce Park at DFW Freeport v. Mardian Constr. Co.,* 729 F.2d 334, 338 (5th Cir.1984)) (emphasis added).

■ When a party asserts a right to arbitration under the Federal Arbitration Act, the question of whether a dispute is subject to arbitration is determined under federal law. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir.1987). The federal courts have interpreted the arbitration provision of Rule 347 of the Stock Exchange to include any dispute involving significant aspects of the employment relationship or depending upon the evaluation of the employee's performance as a broker. *See Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d 1047, 1053 (2d Cir.1989). Applying that standard, claims very similar to those raised by Hawkins and Moise have been held to be arbitrable. *See, e.g., id.* (holding that defamation claim based upon statement that broker was "basically a criminal" was subject to arbitration); *Smith Barney Shearson, Inc. v. Finstad,* 888 S.W.2d 111, 117 (Tex.App.—Houston [1st Dist.] 1994, no writ) (holding that claims based upon statement that fired broker was "unethical" were subject to arbitration to the extent statement related to broker's business practices, as opposed to his sexual mores).

██ In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992); *Genesco, Inc.,* 815 F.2d at 846. The burden was upon Hawkins and Moise to show that their claims fell outside the scope of the arbitration agreement. *See Merrill Lynch, Pierce, Fenner, and Smith v. Longoria,* 783 S.W.2d 229, 231 (Tex.App.—Corpus Christi 1989, orig. proceeding).

On this record, we cannot conclude with positive assurance that the statements at issue here are not at least "factually intertwined" with the arbitrable claims. *See Jack B. Anglin,* 842 S.W.2d at 271. Hawkins and Moise's contention that their claims are outside the scope of the arbitration agreement is inherently inconsistent with their allegations that the statements were uttered to further a conspiracy to blackball them from the securities industry and tended to injure them in their professions as brokers. In order to injure the plaintiffs' professional reputations, the statements must, as a matter of logic, at least touch upon their performance as brokers, making the claims referable to arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 3352 n. 13, 87 L.Ed.2d 444 (1985).[1]

 Mandamus will issue only to correct a clear abuse of discretion when the abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). In this case, the trial court abused its discretion because it misapplied the Federal Arbitration Act to the facts of this case. *See Jack B. Anglin,* 842 S.W.2d at 271. A party who is erroneously denied the right to arbitration has no adequate remedy at law because the fundamental purpose of arbitration—to provide a rapid, less expensive alternative to traditional litigation—would be defeated. *Id.*

Because the claims at issue in this lawsuit are within the scope of Hawkins' and Moise's agreements to arbitrate, we conditionally grant the writ of mandamus and direct the trial court to order that all claims proceed to arbitration. The clerk is instructed to issue the writ only if the trial court fails to do so.

---

1. The defendants also rely on arbitration requirements imposed by the regulations of the National Association of Securities Dealers, the constitution of the New York Stock Exchange, and a "Financial Adviser in Training Agreement" signed by Hawkins. Because we conclude that the disputes between the parties in this case fall within the scope of Rule 347 of the Stock Exchange, we do not address the reach of the other arbitration provisions.