Opinion issued November 27, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00145-CV

———————————

**IPFS CORPORATION, Appellant**

**V.**

**SUE ANN LOPEZ, Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-76204**

---

## MEMORANDUM OPINION

IPFS Corporation appeals from the trial court's denial of its motion to compel arbitration in Sue Ann Lopez's lawsuit for declaratory judgment. The question is whether this lawsuit falls within the scope of the parties' arbitration agreement. It does, so we reverse.

## Background

IPFS provides short-term financing to businesses and individuals so they can pay insurance premiums. Sue Ann Lopez was an IPFS sales representative from July 2015 to November 2017. Lopez then went to work for an IPFS competitor, and IPFS threatened to sue her for breach of non-solicitation contracts she signed with IPFS.

Lopez brought suit seeking a declaration of her rights under the parties' non-solicitation agreements. IPFS contends that her action is subject to arbitration; Lopez disagrees.

The first of the non-solicitation agreements is a 2015 "Confidentiality, Non-Disclosure, Non-Competition and Non-Solicitation Agreement." It prohibits disclosure of "Confidential Information" except as required to conduct IPFS's business or with IPFS's written consent. The agreement also prohibits post-employment solicitation of any producer or potential producer in Texas.

Lopez later acknowledged and signed two other documents: another "Non-Disclosure, Confidentiality and Non-Solicitation Agreement" and an arbitration agreement (the "IPFS Corporation Arbitration Program").

The second non-solicitation agreement restricts the conduct of employees "for one year following the termination of employment with the Company," unless the Company's President consents. The agreement states:

> For any person or entity with whom the [employee] communicated on behalf of the Company during his/her employment as part of his/her

work duties (including, without limitation, customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents or insureds), the [employee] shall not communicate with such person or entity for the purpose of directly or indirectly soliciting business in competition with the Company or otherwise competing with the Company.

This agreement provides that IPFS could seek relief "in accordance with" the arbitration agreement.

Critical in this case, the arbitration agreement defines which disputes are subject to arbitration and which must proceed in court. By its own terms, the arbitration program provides a "process to resolve employment disputes related to legal right," and it "covers all legal claims arising out of or relating to employment, application for employment, or termination of employment, except for claims specifically excluded under the terms of this Program."[1]

The arbitration program excludes only (1) claims made "for workers' compensation benefits, unemployment compensation benefits, ERISA-related benefits provided under a Company sponsored benefit plan, or claims filed with the

---

[1] The arbitration agreement provides examples of covered claims. It states:

The claims covered by this *Program* include, but are not limited to, the following types of claims: wrongful discharge under statutory law or common law; employment discrimination retaliation and sexual or other harassment based on federal, state or local statute, ordinance or governmental regulations; retaliatory discharge or other unlawful retaliatory action; overtime or other compensation disputes; leave of absence disputes; tortuous conduct; defamation; violation of public policy; breach of contract; and other statutory or common law claims.

3

National Labor Relations Board"; (2) lawsuits for temporary equitable relief to preserve the status quo "pending final resolution of the dispute pursuant to the terms of th[e] [arbitration] Program"; and (3) administrative proceedings before the Equal Employment Opportunity Commission ("EEOC").

IPFS moved to compel arbitration, arguing that Lopez's claim fell within the scope of the arbitration agreement. Lopez disagreed, arguing that her claim was equitable, not legal, and thus that the arbitration agreement permitted a court action. The trial court denied the motion to compel arbitration and IPFS filed this interlocutory appeal.[2]

**Analysis**

We review a trial court's ruling on a motion to compel arbitration for an abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009); *Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 565 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We defer to a trial court's factual findings if they are supported by evidence, but we review a trial court's legal determinations de novo. *Labatt Food Serv.*, 279 S.W.3d at 642–43; *Steer Wealth Mgmt.*, 537 S.W.3d at 565.

---

[2]     IPFS also filed a motion to dismiss based on a forum selection clause in the earlier of the two non-solicitation agreements. That clause states: "In the event of a dispute concerning this Agreement . . . the parties shall be required to pursue their rights in any court of competent jurisdiction sitting in Kansas City, Missouri, which shall be the exclusive mandatory venue for any such disputes." No party has argued on appeal that the trial court erred by denying the motion to dismiss or that the forum selection clause in that agreement requires dismissal.

We interpret a contract's plain language. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017).

## I.       Arbitration under the FAA

The parties' arbitration agreement provides that it is governed by the Federal Arbitration Act ("FAA"). No party has challenged the FAA's applicability.

A party seeking to compel arbitration under the FAA must establish the existence of a valid arbitration agreement and that the claims at issue fall within the agreement's scope. *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *Steer Wealth Mgmt.*, 537 S.W.3d at 565. Once the proponent of arbitration has made this showing, "the burden shifts to the party opposing arbitration to raise an affirmative defense to the agreement's enforcement." *Venture Cotton Co-op.*, 435 S.W.3d at 227.

IPFS and Lopez agree that a valid arbitration agreement exists. They dispute whether Lopez's declaratory judgment action falls within its scope.

Under the FAA, we resolve any doubts about whether claims fall within the scope of an arbitration agreement in favor of arbitration. *Henry v. Cash Biz, LP*, No. 16-0854, 2018 WL 1022838, at \*2 (Tex. Feb. 23, 2018) (quoting *In re Serv. Corp. Intern.*, 85 S.W.3d 171, 174 (Tex. 2002)); *accord Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). "The policy in favor of enforcing arbitration

agreements is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Sec.*, 909 S.W.2d at 899 (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)); *accord Henry*, 2018 WL1022838, at *3. "When determining whether claims fall within the scope of the arbitration agreement, we look to the factual allegations, not the legal claims." *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013).

## II. Lopez's claim

Lopez sought a declaratory judgment of her rights under (and the enforceability of) two non-solicitation agreements she signed with IPFS. The factual allegations in Lopez's pleading concern her contacts while she was employed by IPFS, whether she is subject to certain employment-related contractual obligations with IPFS, and whether she breached of any of those obligations. The question before us is whether Lopez's declaratory claim falls within the scope of the parties' arbitration agreement (called "the Program"). Construing the arbitration agreement's plain language and resolving any doubts in favor of arbitration, we conclude that it does.

The arbitration agreement's scope is broad. It "covers all legal claims arising out of *or relating to* employment, application for employment, or termination of employment, *except for claims specifically excluded under the terms*" of the

6

agreement. (Emphasis added.) The arbitration agreement expressly covers, for instance, "claims by an Associate [like Lopez] against any fellow employee, supervisor, or manager based on alleged conduct within the scope of employment," as well as "any claims by the Company against an Associate" and claims by or against an Associate who has ended employment with the Company. The agreement states that if any employee, former employee, or applicant has a covered claim related to legally protected rights, the claim shall be subject to arbitration. And as examples of covered claims, the agreement lists breach of contract and other statutory and common law claims. The agreement touts the Program as "a fair and efficient process to resolve employment disputes related to legal rights."

The arbitration agreement carves out three exceptions to its application. First, the "only" excluded claims are those "by an Associate for workers' compensation benefits, unemployment compensation benefits, ERISA-related benefits provided under a Company sponsored benefit plan, or claims filed with the National Labor Relations Board."

Second, it permits the employee or IPFS to seek temporary equitable remedies in court. It allows:

> *provisional* equitable remedies to the extent such remedies are available under the law, including but not limited to temporary or preliminary injunctive relief, either before the commencement of or during the arbitration process, *to preserve the status quo* or otherwise prevent damage or loss *pending final resolution of the dispute pursuant to the terms of this Program*. (Emphasis added.)

7

Provisional means "temporary." *Provisional*, Merriam-Webster Online (last visited Nov. 8, 2018); BLACK'S LAW DICTIONARY (7th ed. 1999).

And third, the Agreement allows an associate to file an administrative proceeding before the "EEOC," although a claim following the completion of the administrative proceeding remains "subject to the terms of [the arbitration] Program."

No exception applies here. Lopez did not bring any of the excluded claims. She did not seek temporary injunctive relief to preserve the status quo "pending final resolution of the dispute pursuant to the terms of th[e] Program." And she filed no administrative proceeding before the EEOC. Lopez instead sought a permanent declaration of her rights under the parties' non-solicitation agreements. *See* TEX. CIV. PRAC. & REM. CODE § 37.004 ("A person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder."); TEX. CIV. PRAC. & REM. CODE § 37.003(b) (the relief sought "has the force and effect of a final judgment or decree."); *see also In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 188 (Tex. 2007) (parties cannot avoid arbitration through artful pleading). IPFS therefore met its initial burden of showing that Lopez's claim falls within the scope of the arbitration agreement.

In response, Lopez argues that the arbitration agreement covers only "legal" claims—as opposed to equitable or other claims. She bases this argument on the agreement's statement that the "program covers all legal claims arising out of or relating to employment, application for employment, or termination of employment, except for claims specifically excluded under the terms of this Program." She contends that her declaratory judgment action sought only *equitable* and *declaratory*—rather than *legal*—relief because she did not seek money damages. But even though Lopez did not seek money damages, her claim remains arbitrable under the agreement's text.

To begin, the arbitration agreement carves out from its scope *temporary* equitable relief to preserve the status quo while or before arbitration is pending. It would make no sense (and would render it meaningless) to carve out an exception for temporary equitable relief if the agreement excluded *all* non-monetary relief. Lopez's proposed interpretation clashes with the requirement to "harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 443 (Tex. 2017).

The agreement's text, read as a whole, confirms our conclusion. The arbitration agreement broadly explains: "The Company believes that management and employees working together in good faith will result in few, if any, future legal

9

disputes. However, because we believe this Program provides a fair and efficient process to resolve employment disputes related to *legal rights*, we ask all employees to indicate their agreement to the Program . . . ." (Emphasis added.) The agreement also states that if an "employee, former employee, or applicant" has "a covered claim related to legally-protected rights," it will be subject to arbitration. The portion of the arbitration agreement regarding "How to Assert a Claim Under the Program" specifies that a request for arbitration "should include supporting documentation and a statement of the facts, the nature of the claim, and the damages and/or *other remedies sought*." (Emphasis added.) And the agreement's examples of covered claims include claims for which the remedy could potentially be monetary or equitable.[3]

Considering the agreement's plain language and interpreting it as a whole— including its exclusion of one, but only one, form of equitable relief (temporary relief)—we do not interpret the term "legal claims" to remove from the agreement's scope all claims aside from those seeking money damages.

Lopez also argues that the second non-solicitation agreement precludes arbitration here, citing the following language:

> The Company and Associates further agree that the Company has legitimate interests to protect under the terms of this Agreement, a

---

[3] For instance, the Program includes employment discrimination claims and breach of contract claims.

10

> breach of this Agreement could cause irreparable damage to the Company, and the Company may seek equitable relief to enforce the obligations established under this Agreement in addition to any other remedies that might be available under applicable law, in the Courts of Jackson County, Missouri and in accordance with the provisions of the IPFS Corporation Arbitration Program.

But nothing in this language allows an employee to escape the scope of the arbitration agreement by seeking a declaratory judgment. Instead, this agreement confirms that IPFS may seek equitable relief in court in accordance with the arbitration program. This makes sense. The arbitration agreement creates an exception allowing *temporary* equitable relief in court; it otherwise (subject to its exceptions) requires one to proceed under the Program's terms. Nowhere does this non-solicitation agreement enable a former employee to seek permanent declaratory relief in court. We "may neither rewrite the parties' contract nor add to its language." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003).

Finally, Lopez contends that the arbitration agreement is narrow, so we should not apply the usual presumptions in favor of arbitrability. But this contention turns on Lopez's position concerning the words "legal claims"—a position that we have already rejected. Lopez has not demonstrated "with positive assurance" that the arbitration agreement is not susceptible of an interpretation that covers her claim. *See Prudential Sec.*, 909 S.W.2d at 899.

## Conclusion

We reverse the order of the trial court. We remand for dismissal and entry of an order compelling arbitration.

Jennifer Caughey
Justice

Panel consists of Chief Justice Radack and Justices Brown and Caughey.